AO 442 (Rev. 11/11) Arrest Warrant

| | AUSA: Ryan Particka | Telephone: (313) 226-9635 |
|---|---|---|
| Special Agent: | David Needham | Telephone: (703) 947-9938 |

# UNITED STATES DISTRICT COURT
for the
Eastern District of Michigan



RECEIVED
By Amy Godlewski at 8:21 am, Dec 09, 2025

United States of America

v.

Christopher Dzialo

3:26-mj-00018-CLB

☑ FILED ___ RECEIVED
___ ENTERED ___ SERVED ON
COUNSEL/PARTIES OF RECORD

FEB 0 4 2026

CLERK US DISTRICT COURT
DISTRICT OF NEVADA

BY: _____ DEPUTY

## ARREST WARRANT

To:   Any authorized law enforcement officer

**YOU ARE COMMANDED** to arrest and bring before a United States magistrate judge without unnecessary delay

*(name of person to be arrested)*  Christopher Dzialo                                                               ,

who is accused of an offense or violation based on the following document filed with the court:

☐ Indictment ☐ Superseding Indictment ☐ Information ☐ Superseding Information ☑ Complaint
☐ Probation Violation Petition ☐ Supervised Release Violation Petition ☐ Violation Notice ☐ Order of the Court

This offense is briefly described as follows:

18 USC § 01347a - Health Care Fraud
18 U.S.C. 1341--Mail Fraud

Date: December 8, 2025

_____
*Issuing officer's signature*

City and state: Detroit, Michigan

Anthony P. Patti, Magistrate Judge
*Printed name and title*

---

**Return**

This warrant was received on *(date)* _____, and the person was arrested on *(date)* _____
at *(city and state)* _____.

Date: _____

_____
*Arresting officer's signature*

_____
*Printed name and title*

*Distribution: Original Court – 1copy U.S. Marshal – 2 copies USA*

AO 442 (Rev. 11/11) Arrest Warrant (Page 2)

**This second page contains personal identifiers provided for law-enforcement use only and therefore should not be filed in court with the executed warrant unless under seal.**

*(Not for Public Disclosure)*

Name of defendant/offender:  Christopher Dzialo

Known aliases:

Last known residence:

Prior addresses to which defendant/offender may still have ties:

Last known employment:

Last known telephone numbers:

Place of birth:

Date of birth:  02/05/1991

Social Security number:  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

Height:                                      Weight:

Sex:                                         Race:

Hair:                                        Eyes:

Scars, tattoos, other distinguishing marks:

History of violence, weapons, drug use:

Known family, friends, and other associates *(name, relation, address, phone number)*:

FBI number:

Complete description of auto:

Investigative agency and address:

Name and telephone numbers (office and cell) of pretrial services or probation officer *(if applicable)*:

Date of last contact with pretrial services or probation officer *(if applicable)*:

AO 91 (Rev. 11/11) Criminal Complaint | AUSA: Ryan Particka  Telephone: (313) 226-9635
--- | ---
 | Special Agent: David Needham  Telephone: (703) 947-9938

# UNITED STATES DISTRICT COURT
for the
Eastern District of Michigan

United States of America
v.

Christopher Dzialo

Case No. 25-30744

## CRIMINAL COMPLAINT

I, the complainant in this case, state that the following is true to the best of my knowledge and belief.

On or about the date(s) of __June 2023- March 2025__ in the county of __Wayne__ in the __Eastern__ District of __Michigan and elsewhere__, the defendant(s) violated:

| Code Section | Offense Description |
| --- | --- |
| 18 U.S.C. § 1347 | Health Care Fraud |
| 18 U.S.C. § 1341 | Mail Fraud |

This criminal complaint is based on these facts:

☑ Continued on the attached sheet.

_____
Complainant's signature

David Needham, Special Agent
Printed name and title

Sworn to before me and signed in my presence
and/or by reliable electronic means.

Date: December 8, 2025

_____
Judge's signature

Anthony P. Patti, United States Magistrate Judge
Printed name and title

City and state: Detroit, Michigan

## **AFFIDAVIT IN SUPPORT OF CRIMINAL COMPLAINT**

I, DAVID JOHN NEEDHAM, being duly sworn, state as follows:

1. I am a Special Agent with the Federal Bureau of Investigation ("FBI") and have been so employed since October 2024. I am currently assigned to one of the Detroit Field Office's two Health Care Fraud squads. Among other things, I am responsible for conducting investigations of potential violations of federal criminal laws pertaining to both private and government-sponsored insurance programs. In my capacity as a Special Agent, I have assisted in investigations of criminal activity involving, among other things, Medicare fraud, private insurance fraud, and prescription drug diversion. During FBI investigations, I have observed or participated in surveillance, the execution of search warrants, the execution of arrest warrants, debriefings of informants and other witnesses, voluntary interviews of witnesses, and analysis of financial and telephone records. I have also reviewed claims data, medical records, and other business records.

2. As a result of my training and experience, I am familiar with techniques and methods of operation used by individuals involved in criminal activity to facilitate various kinds of fraud and to conceal their activities from detection by law enforcement authorities. In addition to my work experience, I received five months of specialized training regarding various aspects of criminal investigations at the FBI Academy in Quantico, Virginia.

3. This affidavit is being submitted in support of a criminal complaint and arrest warrant. For the reasons set forth below, I respectfully submit that there is probable cause to believe that CHRISTOPHER DZIALO ("DZIALO") has violated

both Title 18 U.S.C. § 1347 (Health Care Fraud), and Title 18 U.S.C. § 1341 (Mail Fraud).

4. I make this affidavit based upon my personal knowledge derived from my participation in this investigation and upon information communicated or reported to me during the investigation by other participants in the investigation, including other law enforcement agents and witnesses.

5. This affidavit is submitted for the limited purposes of showing that there is probable cause to support the requested complaint. This affidavit does not set forth all my knowledge about this matter.

## PROBABLE CAUSE

6. DZIALO submitted reimbursement claims to BCBSM for services purportedly rendered to him between December of 2020 and at least March of 2025. Through the analysis of financial records, medical claims data, and witness interviews, investigators found that DZIALO submitted false medical and pharmacy claims that requested a reimbursement amount of at least $1.3 million between at least June of 2023 and March of 2025. Investigators' analysis of financial records confirmed that DZIALO was reimbursed at least $247,688.58 for these fraudulent claims.

### I. BACKGROUND

#### A. Relevant Individuals and Entities

7. According to initial investigations from the Blue Cross Blue Shield of Michigan ("BCBSM") Corporate and Financial Investigations unit, DZIALO, a

Michigan native believed to currently reside in the vicinity of Reno, Nevada, submitted fraudulent Direct Member Reimbursement ("DMR") claims to BCBSM for a high volume of medical procedures.

8. DZIALO currently possesses a BCBSM Premium Silver 94 plan with Contract ID xxxxx5991, which is a contract number uniquely assigned to DZIALO's policy. DZIALO obtained his BCBSM policy on October 23, 2020, and this policy helps the insured subscriber pay for medical costs like medical office visits, hospitalization services, and preventative care, such as prescription drugs. Thus, BCBSM is a "health care benefit program" as defined in Title 18 U.S.C. § 24. DZIALO has no other dependents or individuals authorized to make decisions for his BCBSM account.

### B. Direct Member Reimbursement ("DMR") Claims

9. BCBSM subscribers can submit DMR claims to BCBSM that reimburse the subscriber when he or she pays for out-of-pocket medical or pharmacy services. Often, a subscriber pays out-of-pocket for medical services because the subscriber receives services from a facility or provider that were not covered within the BCBSM insurance network. To receive reimbursements for medical or pharmacy procedures that were paid out-of-pocket, BCBSM subscribers must have completed a DMR form, provided a statement from the rendering provider confirming services were received, and provided a copy of a paid receipt stating the rendered services. Once BCBSM approves the DMR claim, a

reimbursement check from BCBSM (or OptumRx for pharmacy claims) is mailed to the requesting subscriber.

10. BCBSM subscribers submit medical DMR claims via the BCBSM member portal, which can be accessed on BCBSM.com or through the BCBSM mobile application. Subscribers can complete the claim submission form digitally or print the paperwork to submit the claims via the United States Postal Service ("USPS"). DZIALO submitted all medical DMR forms to BCBSM digitally.

11. When submitting a medical DMR claim on the member portal, the subscriber needs to include their BCBSM contract ID number, the date of the medical service received, the name of the patient who received the medical service, the reimbursement amount sought, the medical provider information, and other related medical procedure information. The subscriber is then prompted to upload and attach supporting claim documents, such as receipts of service. Before the subscriber submits the claim form digitally, the member portal requires the user to acknowledge an attestation statement, which states the subscriber must "certify that the above information is true to the best of my knowledge" and acknowledge that "false receipt or fraudulent alterations of these materials will result in civil or criminal prosecution."

12. Once the DMR claim is submitted on the member portal, a "Next steps" page appears on the subscriber's BCBSM account. This page states that, if the request is approved, a reimbursement check will be sent to the subscriber's

mailing address on file and that a confirmation e-mail will be sent to the subscriber's e-mail address on file.

13. OptumRx is a pharmacy benefit manager ("PBM"). PBMs manage prescription drug benefits provided by Medicare, Medicaid, and private insurers, like BCBSM. PBMs receive, adjudicate, and pay claims on behalf of BCBSM.

14. After a pharmacy dispenses a prescription drug to an insurance subscriber, the insurance subscriber submits a claim through the USPS to the PBM. The PBM, on behalf of BCBSM, reimburses the insurance subscriber through personal check to accounts previously identified by BCBSM.

## II. INVESTIGATION

### A. Medical Claims

15. According to information received from BCBSM, Contract ID xxxxx5991 submitted approximately 554 medical DMR claims, which billed BCBSM more than $1.5 million for services allegedly received between December 2020 and March 2025. Of these 554 medical DMR claims, Contract ID xxxxx5991 submitted at least 154 fraudulent claims related to Epic Brain Centers and Ricardo Gonzalez, who oversaw Epic Brain Centers as a licensed doctor, between January 2024 and March 2025. These fraudulent claims totaled approximately $1,245,265.00. Additionally, at least one fraudulent claim related to Garden State Healthcare was submitted in June 2023, which totaled approximately $68,483.16. Through the analysis of financial records, investigators confirmed that BCBSM reimbursed DZIALO at least $185,960.56 for these fraudulent medical claims.

### 1. Epic Brain Centers

16. Contract ID xxxxx5991 submitted at least 154 claims to BCBSM that alleged DZIALO paid at least $1.2 million for medical services from Epic Brain Centers or Dr. Ricardo Gonzalez, who oversaw Epic Brain Centers as a licensed doctor, between January 2024 and March 2025. DZIALO used an electronic device to submit these claims either through BCBSM.com or through the BCBSM mobile application. Agents obtained electronic copies of medical DMR submissions that DZIALO submitted through the BCBSM member portal, and these submissions do not align with records from Epic Brain Centers.

17. According to a witness interview with the clinic director of Epic Brain Centers, DZIALO had four scheduled visits at Epic Brain Centers. Dzialo met with Epic Brain Centers staff on January 18, 2024, where he pre-paid for two visits: January 22, 2024, and January 26, 2024. DZIALO also paid for a consultation on March 22, 2024. Records from Epic Brain Centers showed that DZIALO paid a total of $1,000 for these appointments at the clinic, contrasted with BCBSM claims data that showed DZIALO paid more than $1.2 million for medical services received from Epic Brain Centers or Dr. Ricardo Gonzalez.

18. Furthermore, investigators obtained bank account statements for DZIALO's debit card number ending in 6022, which was the card on file for DZIALO at Epic Brain Centers. Debit card 6022 was associated with bank account **0086 at Idaho Central Credit Union ("ICCU"), which was DZIALO's checking account. Bank statements for **0086 showed only two payments made to Epic Brain Centers using

debit card 6022, which are both supported by Epic Brain Centers records: a $750 payment made on January 18, 2024, and a $250 payment made on March 22, 2024. According to ICCU bank statements, no other payments were made to Epic Brain Centers from debit card 6022.

19. DZIALO's medical DMR claim submissions for services allegedly received at Epic Brain Centers also contained "super bills" allegedly from Epic Brain Centers that outlined the services purportedly rendered.

20. A super bill is a detailed receipt that medical facilities utilize to explain the services a patient received during a visit. These super bills often include information required for insurance reimbursement, such as the rendering physician, diagnostic codes, procedural codes, dates of medical services received, and the total amount to be paid for the services.

21. The Epic Brain Centers clinic director stated that legitimate super bills originating from Epic Brain Centers did not include the license number of Dr. Ricardo Gonzalez. The super bill that interviewing agents presented during the interview, which was submitted in a medical DMR request from Contract ID xxxxx5991, however, listed the doctor's license number in an area that is otherwise left blank. Thus, the clinic director advised that the super bill shown during the interview appeared to be an "alteration" of a legitimate super bill.

22. One of the super bills attached to a Contract ID xxxxx5991 medical DMR submission included International Classification of Diseases, 10th Revision (ICD-10) codes G47.00 and G93.40. ICD-10 codes are a part of a standardized

system published by the World Health Organization ("WHO") used to code diseases and medical conditions. G47.00 refers to "insomnia" and G93.40 refers to "encephalopathy", which is a condition that causes dysfunction in the brain.

23. G47.00 and G93.40, however, are two diagnoses not used at Epic Brain Centers. The clinic director of Epic Brain Centers created all super bills given to patients based on the doctor's notes from consultations with the patients, and the clinic director never added anything to a super bill that was not included in the doctor's notes. Thus, the addition of these two codes originated from someone outside the facility.

24. A $750 super bill articulating what DZIALO paid for in his consultation on January 18, 2024, was e-mailed on February 13, 2024, to a known e-mail address that DZIALO used to communicate with Epic Brain Centers. When showed multiple super bills that Contract ID xxxxx5991 submitted to BCBSM, which alleged that services were received at Epic Brain Centers, the clinic director of Epic Brain Centers stated one of the super bills "was a template edited by someone outside of Epic Brain Centers" and that super bills were given to patients in a Portable Document Format ("PDF") that were not editable.

25. Subsequent data from PayPal showed that DZIALO purchased or attempted to purchase both "PDF Guru" or "PDF Extra Ultimate", electronic programs which allow users to edit PDFs that could otherwise not be edited.

26. DZIALO submitted DMR claims requesting more than $1.2 million for services not received from Epic Brain Centers or Dr. Ricardo Gonzalez, and,

according to BCBSM claims data, BCBSM reimbursed DZIALO at least $141,441.08 for services that were not received. Through the analysis of financial records, investigators tracked $120,027.40 of these fraudulent proceeds and confirmed that they were deposited into bank accounts in which DZIALO was the sole signatory. Through copies of scanned checks, investigators also confirmed that BCBSM reimbursed DZIALO an additional $48,836.39, which was deposited into account **6620 at Mountain America Credit Union, one of DZIALO's accounts in which he was the sole signatory, on March 18, 2025. BCBSM cancelled these checks on March 21, 2025.

### 2. Garden State Healthcare

27. Contract ID xxxxx5991 electronically submitted one claim to BCBSM that alleged DZIALO received medical services from CarePoint Health on eight separate dates in June 2023: the 2nd, 3rd, 5th, 6th, 7th, 8th, 9th, and 10th. DZIALO used an electronic device to submit this claim either through BCBSM.com or through the BCBSM mobile application, and the claim requested a reimbursement of $68,483.16. Again, the BCBSM medical DMR claims data does not align with the medical records from CarePoint Health.

28. CarePoint Health is a hospital system that owns and operates three medical facilities in New Jersey.

29. The CarePoint Health billing system contains billing information from all entities and facilities within CarePoint Health, including emergency room visits, inpatient services, outpatient services, radiology, and general care. When a patient

is billed from any CarePoint Health facility, the patient's charges appear from "Garden State Healthcare", as Garden State Healthcare is the billing entity of CarePoint Health.

30. According to the billing manager for CarePoint Health, there was no record of DZIALO at any CarePoint Health facilities. Likewise, the Master Patient Index Coordinator for CarePoint Health confirmed that queries for DZIALO in the CarePoint Health system yielded no medical records history. Furthermore, CarePoint Health's medical records yielded no results for DZIALO.

31. Investigators subsequently obtained Lyft, Incorporated ("Lyft"), ride history records for DZIALO. DZIALO's Lyft account, under the username "Khris Dzialo, PharmD", used an e-mail address and a telephone number which, based on BCBSM claim submissions and Apple Inc. records, are both associated with DZIALO.

32. Lyft rider information shows that, on June 3, 2023, DZIALO was picked up from the 5700 block of Hillcrest Street, Detroit, MI 48236—a previous address of DZIALO's according to the alleged super bill received from CarePoint Health— and dropped off at McLaren Hospital at 50 North Perry Street, Pontiac, MI 48342. On June 6 and June 7, 2023, DZIALO again traveled via Lyft between Detroit and Pontiac. Thus, DZIALO's Lyft ride history showed that DZIALO was in Michigan on dates that medical services were allegedly received in New Jersey.

33. BCBSM reimbursed DZIALO at least $65,933.16 for services not received from a CarePoint Health facility, and this money was deposited into

account **9768 at First State Bank on October 4, 2023. DZIALO was the sole signatory on this account.

### B. Pharmacy Claims

34. Between June of 2023 and April of 2024, DZIALO also submitted approximately $79,654.40 in fraudulent claims to OptumRx for prescription medications. These claims appear fraudulent because dispensing records obtained from multiple pharmacies contradict DZIALO's claims submission history. DZIALO utilized the USPS to submit these fraudulent claims to OptumRx via the mail.

35. These pharmacy DMR claims were submitted for DZIALO's alleged payment for the prescription drugs Rukobia, Evotaz, and Dovato. These three prescription drugs are used to treat human immunodeficiency virus ("HIV-1") in adults. DZIALO's submitted claims purportedly corresponded to purchase of this HIV medication at CVS Pharmacy, Walgreens Pharmacy, and Kroger Pharmacy.

36. Both pharmacist witness interviews and records from each of these pharmacies revealed that DZIALO neither received nor paid for Rukobia, Evotaz, or Dovato at any time.

37. Body-worn camera footage from a May 2025 arrest of DZIALO received from the Reno Police Department showed a Washoe County Sheriff's Office employee ask DZIALO if he had HIV, to which DZIALO responded, "not that I know."

38. On July 24, 2023, DZIALO submitted a pharmacy DMR claim to OptumRx alleging that he paid $15,503.47 for Rukobia, Dovato, and Evotaz at a

Kroger Pharmacy. According to claims data provided by OptumRx, OptumRx then reimbursed $15,203.47 for the medication that was purportedly purchased.

39. Records from First State Bank show that $15,203.47, which was attained through fraudulent means, was deposited into account **9768 on August 7, 2023. Account **9768 lists DZIALO as the sole signatory.

40. On August 21, 2023, DZIALO submitted a pharmacy DMR claim to OptumRx alleging that he paid $13,583.68 for Rukobia and Dovato at a Walgreens Pharmacy, and OptumRx claims data shows that OptumRx made a reimbursement payment of $13,583.68 for the medication purportedly purchased. On November 2, 2023, DZIALO submitted another pharmacy DMR claim to OptumRx alleging that he paid $5,304.08 for Dovato and Evotaz at a different Walgreens Pharmacy. OptumRx claims data shows that OptumRx made a reimbursement payment of $5,204.08 for the medication purportedly purchased.

41. Records from First State Bank show that a deposit of $13,583.68 was deposited into account **9768 on September 22, 2023. Likewise, a deposit of $5,204.08 was deposited into account **9768 on November 28, 2023. Thus, approximately $18,787.76, which was attained through fraudulent means, was deposited into an account that listed DZIALO as the sole signatory.

42. On February 1, 2024, DZIALO submitted a pharmacy DMR claim to OptumRx alleging that he paid $14,131.81 for Rukobia, Evotaz, and Dovato at a Walgreens Pharmacy, and OptumRx claims data shows that OptumRx made a reimbursement payment of $13,831.81 for the medication purportedly purchased.

On April 2, 2024, DZIALO submitted another pharmacy DMR claim alleging that he paid $14,104.98 for Rukobia and Dovato at a different CVS Pharmacy, and OptumRx claims data shows that OptumRx made a reimbursement payment of $13,904.98 for the medication purportedly purchased.

43. Records from Mountain America Credit Union show that a check of $13,831.81 from OptumRx was deposited into account **6620 on February 20, 2024, and a check of $13,904.98 from OptumRx was deposited into account **6620 on April 15, 2024. Signature statements for account **6620 listed DZIALO as the sole signatory.

44. DZIALO submitted a final pharmacy DMR claim form requesting $17,026.38 in reimbursement for Rukobia, Dovato, and Evotaz, which were allegedly purchased at a CVS. DZIALO signed this DMR form on April 14, 2024. According to claims data from OptumRx, however, only claims for Dovato and Evotaz were submitted, and they were submitted on August 21, 2024. Investigation into this discrepancy in the data is ongoing.

45. Based on the overall investigation, evidence shows that DZIALO submitted fraudulent claims of approximately $79,654.40 to OptumRx, and investigators confirmed at least $61,728.02 were deposited into bank accounts in which DZIALO was the sole signatory.

## CONCLUSION

46. Based upon the foregoing, and in support of a complaint and arrest warrant, I submit that this affidavit sets forth sufficient facts to establish probable

cause to believe that, from in or around June 2023 and continuing through in or around March 2025, in the Eastern District of Michigan, and elsewhere, CHRISTOPHER DZIALO knowingly and willfully executed or attempted to execute a scheme or artifice to defraud a health care benefit program or obtained, by means of false or fraudulent pretenses, representations, or promises, any of the money or property owned by, or under the custody or control of, a health care benefit program, in connection with the delivery of or payment for health care benefits, items, or devices, and, subsequently, committed Health Care Fraud; in violation of Title 18 U.S.C. § 1347.

47. This affidavit also sets forth sufficient facts to establish probable cause to believe that, from in or around June 2023 and continuing through in or around March 2025, in the Eastern District of Michigan, and elsewhere, CHRISTOPHER DZIALO devised or intended to devise a scheme or artifice to defraud, or for obtaining money or property by false or fraudulent pretenses, representations, or promises, and for the purpose of executing such scheme or artifice or attempting to do so made use of the mails to submit pharmacy claims and likewise knowingly caused checks to be delivered by mail, and, subsequently, committed Mail Fraud; in violation of Title 18 U.S.C. § 1341.

*David John Needham signature*

David John Needham
Special Agent
Federal Bureau of Investigation

Sworn to before me and signed in my presence
and/or by reliable electronic means.

_____
Honorable Anthony P. Patti
UNITED STATES MAGISTRATE JUDGE

December 8, 2025

UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF MICHIGAN

United States of America,

    Plaintiff,

v.                                    Criminal No. 25-30744

Christopher Dzialo,

    Defendant.
_____/

## ORDER UNSEALING THE COMPLAINT AND ARREST WARRANT

For the reasons stated in the government's motion, it is ordered that the Complaint, Arrest Warrant, and all attendant papers be unsealed.

**IT IS SO ORDERED.**

                                                  s/ Anthony P. Patti
                                                  Anthony P. Patti
                                                  United States Magistrate Judge

Entered: January 5, 2026